2011-7025 Ross v. Department of Veterans Affairs Good morning, Mr. Dowd. You may proceed. Good morning, Judge Lynn, and may it please the Court. My name is Matthew Dowd, and I, along with my colleague Adrian Johnson, represent the veteran, Victor Ross, in this case. There are three main errors that occurred in this case. This is a case that's been pending for some time, as you can tell from the record. First main error, the Veterans Court below relied on an incorrect definition of the term hypertension. The term itself is defined in the regulations. For whatever reason, the Court opted to use a different definition, a dictionary definition, which is not consistent with the regulations. Yeah, but that definition didn't exist in 1975 when the claim was filed, did it? That's correct, Judge Dyke. Well, isn't it established that you apply the standards that existed at the time the claim was filed? Well, I think this case is a little different because this is a pending claim. Well, no, isn't that true? I mean, I'm not talking about clear and unmistakable error. I'm saying that my understanding is that, in general, the VA and the Court of Appeals for Veterans Claims applies the law to a claim at the time the claim was filed. As a general principle, that's correct, Judge Dyke. So your problem is that when this claim was filed in 1975, this definition that you rely on didn't exist. I grant that. That is true. But what happened here was that the Veterans Court relied on that definition in its current analysis of whether there was clear and unmistakable evidence in terms of whether the condition preexisted service and whether the condition was aggravated by service. I think that's where the definition was applied. The government doesn't really dispute that. The government disputes whether the Veterans Court actually relied on the definition. They're not saying a different definition should have applied. But if you look at the Veterans Court's opinion, the Court relies on that definition in going through the two-prong analysis of whether the condition of hypertension existed before service and whether there was any aggravation during service. And I think that's current analysis that has to be done under current law. The Court is applying the definition in a current and open claim that's been pending for about 30 years. And I think part of the problem with the definition that the Court applied is that one is inherently ambiguous. And if you read the definition itself, it says that there's a range or a couple of ranges. It doesn't really specify which range was used in determining whether there was hypertension before service or whether it was aggravated during service. And I think when you look at the actual blood pressure readings that the Court relied upon or looked to and the Board looked to, there's a clear disconnect between the definition that's in the regulation and the actual values that the Court turned to. And I understand that this Court, it's not your job to look at those values and make that factual finding. But our position is that the Veterans Court's reliance on that definition was legally erroneous because it was different, inconsistent with, and ambiguous with respect to the definition that's in the regulation. In addition to that, the VA repeatedly misinformed Mr. Ross about the type of evidence that he needed in terms of supporting his claim. The error in that respect was that the VA told Mr. Ross that his claim was closed when in fact it was open. The problem there is that that leads to the VA's third error. The VA should have afforded Mr. Ross a medical opinion to determine whether his hypertension had preexisted service or had been aggravated during service. So I think if you look at the record and if you look at the actual blood pressure readings, there's no dispute, and I don't think the VA disputes today, that the actual values that are present in the record don't fall under the definition of hypertension as set forth in the regulation. And if you look at the values that the VA and the court below relies on, there's no dispute that they don't satisfy the definition of hypertension or being aggravated. And I think part of the issue here is that the VA looks to a 1974 medical board opinion and says that's proper support to deny Mr. Ross' claim. I think there are two errors in that. One, the simple fact is that it's a 30-year-old opinion, and I don't think that qualifies as competent evidence. And two, the second error in that is that the opinion itself necessarily doesn't include the rest of Mr. Ross' medical records. So there's no way that medical board opinion in 1974 can speak to whether Mr. Ross' hypertension has been aggravated by service because it hasn't included the entirety of the record that was pending before the board and before the Veterans Court. I think in that respect, there we have a clear case of misreliance on incompetent medical opinion evidence. Now I would add that the basic point here is that this is a 30-year-old claim that's been pending for a long time, it's been open, and the VA really committed a serious procedural error by telling the Veteran of the wrong type of evidence that was necessary to support his claim. The Court of Veterans Claims found that the error was harmless, am I right about that? They did find that. And is that really viewable by us in terms of whether or not an error was harmless? No, Your Honor. So why isn't that the end of the case at that point? Because they applied the wrong legal standard in terms of whether the error was harmless. They applied an incorrect definition of the term hypertension. I mean, that's the legal error in this case. And I'm not asking this Court to go ahead and make a separate determination of whether there was harmless error or not. I think if you look at the record and if you look at the values that are present for Mr. Ross, it's pretty clear that there is a disconnect between the Veterans Court's finding of hypertension or not and the actual values. But the important point here is that it was legal error to rely on a definition that, one, conflicts with the regulations definition and, two, is inherently ambiguous. Yeah, but the problem is that it's a current definition. It's not the definition from 1975. And you haven't shown that the 1975 definition is inconsistent with the definition that was quoted by the Court of Appeals for Veteran Claims. Well, I think the common understanding is that there might have been multiple definitions of hypertension. I mean, the Court of Veterans Claims says itself in the definition that is cited there are multiple definitions. And whether the definition at the time was the same or not, I grant you that might be an issue. But the point here is that there's legal error in the Veterans Court's analysis of whether the hypertension preexisted service and whether it was aggravated by service. And that's tied to the current definition of hypertension. And when you do the analysis of whether there's hypertension preexisting service, you might have to apply the definition that was done at that time in 1974. But the question today is whether his hypertension has been aggravated or not. And there, that's a continuing analysis. And the definition of hypertension may indeed change over time. But that second prong of the analysis looks at the entire body of the medical record and definitely has to change in terms of the definition of hypertension. That has to be updated. And so when you're looking at that second prong of the test, you necessarily don't apply the old definition. You apply the current definition. And there's no dispute, the government doesn't dispute, that the two definitions are in fact different. I don't understand why you apply the current definition. What's the authority for that? Because it's an open pending claim. And you're looking at the- No, but my understanding is that the law is that where you have a pending claim, you apply the law that existed when the claim was filed. And what you haven't shown is that they used a definition that was the wrong definition in 1975 when the claim was filed. I grant you that that might be the case for the first prong of the test. But for the second prong, the question is whether the condition, the pre-existing condition, assuming it pre-existed, was aggravated by service. And the only way you can do that analysis is by looking at the entire body of Mr. Ross's medical evidence. And that changes over time. And the current medical understanding of what hypertension is changes over time. And because his claim was an open pending claim in 2006, the VA was obligated to analyze whether at that time, based on his current medical record, on that time, whether his hypertension had been aggravated by service. And I think that is the key error here. Because that is what completely makes the 1974 board opinion incompetent. Because it takes absolutely no consideration in terms of his history of illness. And it's also why you have to use the current definition. Because it wouldn't make sense to use an old definition to assess whether 10 years or 5 years or 20 years later, his health was adversely affected by his time in service. And it may be that with certain conditions, the definition doesn't change, or there's no need to look at subsequent medical records. But here, particularly with a condition such as hypertension, where for the most part it's a symptomless condition, where it might only manifest in some chronic or acute condition such as a stroke, you necessarily have to look at the body of evidence and you have to update the definition. I'm into my rebuttal time, so I'll reserve that. Thank you. Thank you. Ms. Kerber, good morning. Good morning. May it please the Court. By suggesting that this Court look at the values of the blood pressure readings, the appellant is suggesting that this Court basically play doctor and that the Veterans Court was required to make a medical determination, make a medical diagnosis of hypertension, whether it applied to the rating schedule definition. And I think underlying that assertion is a fundamental misunderstanding of how the rating schedule definition fits into a service connection decision. Now, the rating schedule definition comes into play when there's already been a diagnosis of a disorder. Which standard is the Board supposed to apply? Is it the standard that existed when the claim was made or the standard at the time of the decision? My understanding, Your Honor, is that it's at the time of the decision, but that's the rating. At the time of the decision? I'm sorry, at the time the claim was filed. But the issue here is that the VA rating schedule definition wouldn't actually be required in any case, either the 1975 version or the current version. The rating schedule definition, which was not there in 1975, is for deciding what rate of compensation to give a service-connected disease, not to determine whether someone has a specific disease. That's a medical diagnosis that has to be done by a doctor, not by the Board of Veterans Appeals, not by the Veterans Court, and certainly not by this Court. And in this case, there was a determination of a history of hypertension before entering service by a medical board? Yes, Your Honor. Yes, that was the Navy Medical Board that looked at his entrance examination, his entrance medical history, and determined that though Mr. Ross was given a passing grade on his entrance examination, there was concern about his blood pressure. There was a two-day blood pressure reading. There were notations that he had a chronic history of chest pain upon exertion. All of these indicated a hypertension condition existing prior to entry into service, and that was a specific finding by the Navy Medical Board that the VA relied upon, that the board and the Veterans Court relied upon, and deemed it was credible. And that credibility determination is a factual one not reviewable by this court. Yes, and is that, am I correct that that determination was not based upon or in reliance on any particular definition of hypertension? It certainly wasn't in reliance upon the VA definition, because that was the Navy Medical Board and not a VA board. There would have been some medical diagnosis, and so the doctors would have had some sense of what hypertension meant. I don't think that there is anything in the record to suggest a specific diastolic pressure or systolic pressure that if you're over that threshold, automatically you have hypertension or automatically you don't. Not being a doctor, I'm not really sure what other factors there would be, but there is no specific definition laid out in the Navy Medical Board's decision. But it's probably fair to say, isn't it, that there had to be some definition that was applied. Yes, Your Honor. There would have been some understanding of what hypertension meant, and the decision itself, or rather the Navy Medical Board's opinion, explains its reasoning and cites elevated blood pressures, chronic pain upon exertion. It diagnoses him with, or states that his diagnosis is labile hypertension, which means that it's susceptible to change, as in after a certain amount of time resting, his blood pressure will go back down, but upon exertion it will go back up. That is obviously some definition of hypertension was applied, a medical definition done by medical experts, doctors, not the VA's or not the Veterans Court. And the Veterans Court was not required to make a medical finding. It was required to look at the evidence before it, determine whether that evidence was clear and unmistakable, and it did so. And that is a finding of fact as applied to law and not reviewable by this court. The legal question is whether it was required to use this rating schedule definition in its decision, and it just wasn't required. It could make its determination by looking at the record and looking at the medical opinion from 1974 and looking at the rest of the data and saying, this is confident and this is clear and unmistakable. Now with respect to the duty to assist issues, the notice letter issue was, there's no question that the notice letter was incorrect. It was a pending claim. But the board found that this was not a prejudicial error, and that's a factual determination not reviewable by this court. With respect to the medical exam, similarly the board found that it had all available, the available medical evidence is sufficient for an adequate determination. There was no need to get additional medical opinion because the medical opinion it had was contemporaneous with the actual diagnosis. It in fact did have data about whether it made a specific finding about preexisting service. It made a specific finding that it was not aggravated by service. And there were additional data that suggested that this opinion was competent and reliable, and the board therefore did rely upon it. And there's no case law that the government has been able to find that suggests that a 30 year old opinion should, by virtue of its age, be found incompetent. In fact, this is at the time when there was the best available evidence as to what was happening during service and what his service would have done in terms of affecting his hypertension. And it was found not to have aggravated his hypertension. If there are no further questions, we respectfully request that this court affirm the Veterans Court decision. Thank you very much. Mr. Dowd, you've got a few minutes before we vote. Thank you, Yara. I'd like to just focus on the second prong of the analysis. And really, the government's attorney said that there are all these opinions that talk about whether his hypertension was aggravated, but there isn't any that discuss his medical records past 1975. And with a condition such as hypertension, where he has a long history of medical records that in part speak to it, I think it's required to get a medical opinion to determine whether that factual finding is correct. And the Veterans Court necessarily had to apply some criterion to determine whether his subsequent medical records demonstrated aggravation. And the government's attorney said itself that that is something, it's a medical diagnosis that has to be done by a doctor. The board never looks to any medical opinion that talks to the aggravation prong with respect to subsequent medical records. The Veterans Court had to reassess that analysis because the board itself referenced the wrong standard of review. The board mentioned preponderance of the evidence. So the Veterans Court had to go back, look at the actual values, and make its own independent assessment of whether Mr. Ross' hypertension had been aggravated. And before it was a long history of medical records, I can't stand before you and tell you whether those medical records suggest or mean that his hypertension was aggravated or not. That's something that has to be done by a medical doctor or physician, some expert. Mr. Ross was never given that opportunity. The board and the court made its own factual determination. And when the court did so, it necessarily relied on a definition of hypertension that put forth in its opinion. The definition itself is ambiguous. So we really don't know what the Veterans Court did. And when they looked at each independent value of the blood pressure readings, we don't know which ones constitute hypertension in the court's opinion and which ones don't. And I think at the end of the day, Mr. Ross might not have a claim. But here, our point is that we don't know what the Veterans Court did. We do know that they cited a definition of hypertension that conflicts with what's in the regulations. And we know that there's no medical opinion in the record that talks to Mr. Ross's subsequent medical history and determines whether his hypertension was aggravated by service. So with that, I ask the board and the court to vacate and remand. Thank you. Thank you very much. The case is submitted.